IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FRIENDS SERVICE COMMITTEE<br>12000 Biscayne Blvd., Ste. 202<br>North Miami, FL 33181,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES AIR FORCE<br>1690 Air Force Pentagon<br>Washington, DC 20330,<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY<br>2707 Martin Luther King Jr. Avenue SE<br>Washington, DC 20528,<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT<br>500 12th Street, SW<br>Washington, DC 20536,<br><br>    Defendants. | Case No. 21-cv-2774 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1.    Plaintiff American Friends Service Committee ("AFSC"), a nonprofit organization dedicated to building the power of migrants and refugees, among other humanitarian efforts, brings this case to remedy violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by Defendants the United States Air Force ("Air Force"), the United States Department of Homeland Security ("DHS"), and United States Immigration and Customs Enforcement ("ICE"). Defendants' violations consist of failing to timely respond to Plaintiff's FOIA request to the respective agencies and failing to provide responsive records concerning

1

environmental conditions and migrant detention at the Homestead Temporary Influx Shelter for Unaccompanied Alien Children ("Homestead detention center" or "detention center") in Homestead, Florida.

2. The site of the Homestead detention center was previously part of the Homestead Air Force Base when the United States Environmental Protection Agency ("EPA") placed the Base on the Superfund National Priorities List in 1990 for generating hazardous pollution and contamination. *See* Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601 *et. seq* ("CERCLA" or "Superfund"). Base activities causing waste included aircraft operation and maintenance, munitions activities, and the disposal of hazardous wastes on site, including waste paints, paint thinners, pesticides, solvents, waste oils, waste gasoline, and hydraulic fluids.[1]

3. After Hurricane Andrew damaged most of the base in 1992, the federal government initiated a Base Realignment and Closure ("BRAC") process, redesignating portions of the Air Force Base as the Homestead Air Reserve Base and transferring, selling, or leasing the remaining land and property. The underlying contaminated site is still referred to as the "Homestead Air Force Base" Superfund site.

4. Years ago, the Air Force transferred the current site of the detention center to the Department of Labor ("DOL"). In recent years, DOL has allowed the Department of Health and Human Services ("HHS") to use the facility as a detention center for unaccompanied migrant children.

---

[1] U.S. EPA, Homestead Air Force Base, Cleanup Activities, Background, *available at* https://cumulis.epa.gov/supercpad/SiteProfiles/index.cfm?fuseaction=second.Cleanup&id=0404746#bkground (last visited October 1, 2021).

5.     On July 26, 2019—more than two years ago—the nonprofit organization WeCount! submitted a FOIA request to the Air Force and DHS (among other agencies) for records relating to environmental hazards and conditions at and near the Homestead detention center, as well as plans for migrant detention there.  Considering the potentially grave and imminent risks to children's health and safety, among other concerns, WeCount! requested expedited processing of the FOIA requests.

6.     On August 9, 2019, DHS referred the FOIA request to its component agency ICE.

7.     On October 21, 2020, WeCount! assigned its rights to the FOIA requests to Plaintiff AFSC.  Plaintiff, through counsel, later notified the respective federal agencies.

8.     Despite numerous follow-up communications to the agencies, the Air Force, DHS, and ICE have not made determinations on the FOIA requests or provided responsive records—more than two years after the requests were submitted and significantly outside of FOIA's prescribed time limit of 20 working days.

9.     A FOIA request was submitted to the Defendant agencies because there are 34 distinct contaminated areas (known as operable units, or "OUs," under CERCLA) that are within the original boundaries of the Base and adjacent to the detention center.  Though some OUs have been remediated, cleanup at the site is ongoing, and the site has not been cleared for reuse and redevelopment.[2]

---

[2] U.S. EPA, Homestead Air Force Base, Superfund Site Profile, Cleanup Progress, *available at* https://cumulis.epa.gov/supercpad/SiteProfiles/index.cfm?fuseaction=second.schedule&id=0404746 (last visited October 1, 2021).

10. Based on publicly available records, there are at least sixteen Superfund OUs within two-thirds of a mile of the detention center.[3] Some of the OUs closest to the detention center are contaminated with arsenic, lead, mercury, polycyclic aromatic hydrocarbons ("PAHs"), and trichloroethene[4]— contaminants that can cause cancer; damage to the kidneys, liver, and immune system; anemia; and developmental harm in children.

11. Additionally, the Homestead Air Reserve Base, which is directly adjacent to the detention center, flies F-16C fighter jets, creating the risk of chronic noise exposure at harmful decibel levels.

12. The federal government detained migrant children at the Homestead detention center between 2016 and 2019, some of whom were separated from their families under the Trump Administration's "zero tolerance" immigration policy.

13. In August 2019, the federal government stopped detaining children at the Homestead detention center, following news reports that the facility did not have a hurricane plan in place and following mass protests decrying the facility's cramped and unsafe conditions.[5]

---

[3] *See* U.S. Department of Health and Human Services, *Public Health Assessment for Homestead Air Force Base, Homestead AFB, Dade County, Florida, Cerclis No. FL7570024037* (September 30, 1998); AGEISS, Inc., HSWA Corrective Action Permit Renewal Application, Homestead Air Reserve Base, Florida EPA (February 2016).

[4] *See* Air Force Civil Engineer Center, *Third Five-Year Review (FYR) Report for CERCLA Sites: SS034/OU-20, SS035/OU-21, OT022/OU-26, OT024/OU-28, OT026/OU-29, SS040/OU-30, and SS042/OU-31, Former Homestead Air Force Base (BRAC) Miami-Dade County, Homestead, Florida USEPA ID No. FL7570024037* (September 2016).

[5] Associated Press, *Advocates protest outside Homestead detention center for kids*, Sun Sentinel (June 16, 2019), *available at* https://www.sun-sentinel.com/news/florida/fl-ne-homestead-protest-20190616-zjo675uqzfgpxhnrkfx2xky4re-story.html; Monique O. Madan, *All children have been moved from Homestead detention center. They're not coming back*, Miami Herald (August 3, 2019), *available at* https://www.miamiherald.com/news/local/immigration/article233488172.html.

14. The Homestead detention center did not officially close in August 2019, however. It entered standby, or "warm," status, whereby the federal government can quickly reopen it at any time and resume detaining migrant children there.[6] The detention center has remained in warm status since 2019.

15. When last operational, the Homestead detention center was the largest child-immigrant detention center in the United States and the only child-immigrant detention center that operated for-profit (whereby the federal government contracted with a for-profit corporation to operate the facility).[7]

16. Notwithstanding public concern about conditions at the Homestead detention center and pressure to officially close it, in March 2021, the Biden Administration announced plans to reopen the detention center as the "Biscayne Influx Care Facility," to continue detaining unaccompanied minors there.[8]

17. The documents sought in the July 2019 FOIA requests are related to AFSC's humanitarian mission of empowering and advocating for migrants and refugees. Children who have been detained at the Homestead detention center have a right to learn the extent of the environmental hazards and contamination to which they were exposed. And because the federal

---

[6] Monique O. Madan, *There are no kids left at the Homestead detention center, but has it truly shut down?*, Miami Herald (August 6, 2019), *available at* https://www.miamiherald.com/news/local/immigration/article233546697.html.

[7] Dan Primack, *America's only for-profit detention center for migrant children*, Axios (June 27, 2019), *available at* https://www.axios.com/homestead-private-equity-migrant-children-camps-55512adf-a64c-480e-b516-b6d836f0e2ea.html.

[8] Monique O. Madan and Alex Daugherty, *Exclusive: Homestead detention center for unaccompanied migrant teens to reopen under Biden*, Miami Herald (March 7, 2021), *available at* https://www.miamiherald.com/article249449265.html.

government has attempted to detain children at toxic military sites in other parts of the country[9] and announced its intent to reopen the Homestead detention center, there is a compelling need for the public and concerned advocates nationwide to obtain the information sought in the requested records. By failing to make a determination on the FOIA requests and to provide responsive records, Defendants are actively impeding AFSC's right of access to government information and its ability to carry out its organizational mission, to the detriment of the organization and the public.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

19. Venue properly lies in this District because the District of Columbia is a proper forum for FOIA cases, and Defendants are agencies of the United States who reside in the District of Columbia. 5 U.S.C. § 552(a)(4)(B); 28 U.S.C. § 1391(e)(1)(A); *In re Scott*, 709 F. 2d 717, 720 (D.C. Cir. 1983).

20. This Court has authority to grant the requested relief in this case pursuant to FOIA, 5 U.S.C. § 552(a)(4)(B), (E), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

## PARTIES

21. AFSC, founded in 1917 and headquartered in Philadelphia, Pennsylvania, is a Quaker organization that promotes social justice, peace, and humanitarian service. With 19

---

[9] Earthjustice, *Toxic Cages: Toxic contaminants at Goodfellow Air Force Base put children's health at risk* (February 2019), *available at* https://earthjustice.org/sites/default/files/files/Goodfellow_report_2019-02-11.pdf; Earthjustice, *Hundreds of Documents Released Detailing Plans to Build Migrant Detention Facilities at Contaminated Fort Bliss Site* (November 21, 2019), *available at* https://earthjustice.org/news/press/2019/foia-request-documents-on-plans-for-fort-bliss-migrant-detention-center.

offices in the United States, and 16 offices abroad, AFSC's mission is to work with communities and partners worldwide to challenge unjust social systems and promote lasting peace.  AFSC works to support humane migrant responses, alternatives to over-policing and mass incarceration, and just economic practices that support people and the planet.

22. AFSC supports migrants and refugees in the United States by providing or engaging in legal services, trainings, human-rights monitoring, humanitarian relief, immigrant-led organizing, and advocacy for just immigration policies.

23. As a part of its immigration advocacy efforts, AFSC is part of a broad coalition that advocates for the just treatment of immigrants and the end of child detention and family separation.  Since 2019, AFSC has been raising concerns over the safety of children detained at the Homestead detention center and has called for the permanent closure of the site due to its proximity to a military Superfund site.  AFSC intends to use its public platform to disseminate the information it receives from this request.

24. Defendant Air Force is an agency of the United States government and an agency within the meaning of 5 U.S.C. § 552(f).  The Air Force is a component agency of the Department of Defense ("DoD") and operates and maintains Air Force bases throughout the United States, including the Homestead Air Reserve Base.  Pursuant to a Federal Facilities Agreement entered into between the Air Force, EPA, and the Florida Department of Environmental Protection, the Air Force is responsible for the cleanup and monitoring of the Homestead Air Force Base Superfund site.  The Air Force is headquartered in Washington, DC

25. Defendant DHS is an agency of the United States government and an agency within the meaning of 5 U.S.C. § 552(f).  DHS is responsible for administering and enforcing

United States immigration law. DHS is comprised of multiple component agencies, including ICE. DHS is headquartered in Washington, DC.

26. Defendant ICE is an agency of the United States government and an agency within the meaning of 5 U.S.C. § 552(f). ICE enforces immigration and customs law and detains and removes immigrants. ICE refers unaccompanied migrant children who enter the United States to HHS, the federal agency responsible for the custody and care of migrant children. ICE is headquartered in Washington, DC.

27. Defendants have custody and control over the records Plaintiff seeks in this action.

## LEGAL STANDARD

28. FOIA's basic purpose is to ensure government transparency and the expeditious disclosure of government records. FOIA creates a statutory right of public access to agency records by requiring that federal agencies make records available to any person upon request. 5 U.S.C. § 552(a)(3)(A).

29. FOIA imposes strict deadlines on federal agencies to respond to FOIA requests. An agency has 20 working days to determine and notify the requester whether responsive documents exist, whether the agency will release them, and the reasons for its determination. *Id*. § 552(a)(6)(A). *See also* 6 C.F.R. § 5.6(c).

30. The agency must make reasonable efforts to search for records that are responsive to a FOIA request. *Id.* § 552(a)(3)(C), (D). Once a determination is made, the agency must make the requested records "promptly available" to the requesting party. *Id.* § 552(a)(3)(A).

31. Agencies are required to provide "an estimated date on which the agency will complete action on the request" whenever a request will take more than ten days to resolve. *Id*. § 552(a)(7)(A), (B).

32. If the agency demonstrates that it faces "unusual circumstances," as defined in the statute, it may delay the time to make its initial determination by only ten working days. *Id*. § 552(a)(6)(B)(i). When extending the period for unusual circumstances, agencies must provide notice of the extension, to include "the date on which a determination is expected to be dispatched." *Id*. *See also* 6 C.F.R. § 5.5(c); 32 C.F.R. § 286.8(c).

33. If the agency withholds responsive records, it bears the burden of proving that a statutory exemption applies and that it outweighs FOIA's policy of disclosure. 5 U.S.C. § 552(a)(4)(B). Even if an agency determines that some information is exempt from disclosure, it must still release to the public any portions of the record that contain "reasonably segregable" non-exempt information. *Id*. § 552(b).

34. An agency may refer a FOIA request to one of its component agencies for processing. The original agency to receive the request nevertheless remains obligated to ensure the request is processed. *Banks v. Department of Justice*, 813 F. Supp. 2d 132, 136 n.3 (D.D.C. 2011) ("Notwithstanding the referral of records to another federal government entity, the [first agency that received the FOIA request] remains obligated to state that these records were disclosed in full or to justify the reasons for withholding the records in full or in part"). *See Schoenman v. Fed. Bureau of Investigation*, 604 F. Supp. 2d 174, 204 (D.D.C. 2009) (directing the FBI to "provide a complete accounting of all referrals made and indicate whether all documents so referred have been processed and released to Plaintiff, as appropriate").

35. An agency's failure to comply with FOIA deadlines constitutes a constructive denial of the request, and the requester's administrative remedies are deemed exhausted for purposes of litigation. 5 U.S.C. § 552(a)(6)(C)(i). FOIA provides that the district court shall have jurisdiction "to enjoin [an] agency from withholding agency records and to order production of any agency records improperly withheld from the complainant." *Id*. § 552(a)(4)(B).

## STATEMENT OF FACTS

36. Based on the threat of harm to migrant children at the Homestead detention center due to its proximity to a military base and Superfund site, on July 26, 2019, WeCount!, through counsel, submitted FOIA requests via electronic mail to the Air Force and DHS.[10] *See* Ex. A, B. On July 29, 2019, WeCount!, through counsel, sent courtesy copies of the requests to the agencies via certified mail.

37. The requests to the agencies sought records of environmental, health, and safety conditions at and near the detention center and information regarding the government's plans to detain migrant children there.

38. Among other specific items requested, the requests sought:

- National Environmental Policy Act ("NEPA") analyses pertaining to the detention center;

- Environmental testing results (including analyses of soil, soil gas/vapor, groundwater, surface water, and air) at the detention center and surrounding Base;

- CERCLA Superfund cleanup records;

---

[10] Earthjustice, on behalf of WeCount! and then later, on behalf of AFSC, also submitted FOIA requests to the Department of Health and Human Services, the Department of Labor, and the Environmental Protection Agency.

- Records of chemical contamination and exposure at the Base, weapons testing, and pesticide application;
- Records related to the detention center's drinking water quality, sanitation, sewage treatment, and wastewater disposal;
- Records pertaining to natural disasters, including disaster response planning documents and flood analyses;
- Records of plans for migrant detention at the facility, including transport, care while detained, and release plans; and
- Records of the Base's estimated daily flights and projected future flights.

39. Because of the urgent need to inform the public of government activities and policies regarding the treatment of migrant children and the imminent threats to the lives and safety of children detained at the detention center, WeCount! requested expedited processing of the requests.

40. Subsequently, the primary staff member at WeCount! handling advocacy efforts regarding the Homestead detention center, including pursuit of these FOIA requests, changed her employment from WeCount! to AFSC.  As a result, WeCount! assigned to AFSC its rights under FOIA to the requests, *see* Ex. C, "Assignment of Freedom of Information Act Rights and Interests," and later, through counsel, notified the relevant agencies.  *See* Ex. D, E.

41. WeCount! assigned its rights to the FOIA requests to AFSC so that stewardship of the requests remained with the key staff member handling the FOIA requests and leading advocacy efforts regarding the Homestead detention center.  *See* Ex. C.  Moreover, both WeCount! and AFSC are nonprofit organizations that work to defend and empower immigrants and advocate on their behalf.  *See* Ex. C.  To that end, WeCount! intended to disseminate

11

information sought in the FOIA requests to its numerous followers and supporters, in furtherance of its mission. *See, e.g.*, Ex. A, B at 4, 5. AFSC, upon receiving the rights to the FOIA requests, intends to do the same. *See National Sec. Counselors v. C.I.A. (NSC I)*, 898 F. Supp. 2d 233, 242-44, 254-59 (D.D.C. 2012) (to satisfy standing in FOIA litigation, upholding as valid and enforceable the assignment of rights to FOIA requests from one nonprofit organization to another nonprofit organization, following the change in employment of the individual who worked on the FOIA requests and, *inter alia*, given the strong "identity of interests between the proposed substitute party and the original requestor"); *National Sec. Counselors v. C.I.A. (NSC II)*, 960 F. Supp. 2d, 101, 140-41 (D.D.C. 2013) (affirming *NSC I* and the general assignability of a statutory right of action).

42. Under FOIA, an agency has 20 working days after submission of a FOIA request to determine and provide notice of whether the responsive documents exist, whether the agencies will release them, and the reasons for their determination, while making responsive records promptly available. 5 U.S.C. § 552(a)(3), (a)(6)(A).

43. On August 23, 2019, the 20-working day period from submission of the July 26, 2019, FOIA requests expired.[11]

44. To date, Defendants have not made a determination on the FOIA requests or provided responsive records sought.

**Communications with the Air Force about the FOIA Request.**

45. WeCount!'s and then Plaintiff AFSC's communications, through counsel, with the Air Force are attached as composite Exhibit F and are summarized as follows:

---

[11] Even though DHS referred the FOIA request to ICE on August 9, 2019, the 20-day time limit to make a determination on the request has long past. *See* 5 U.S.C. § 552(a)(6)(A)(ii); "Communications with DHS and ICE about the FOIA Request," *infra*.

46. On September 10, 2019, counsel for WeCount! sent an email to the Air Force seeking an update on the status of the FOIA request. The Air Force did not respond to the email.

47. On November 15, 2019, and again on June 3, 2020, counsel for WeCount! sent an email to the Air Force requesting an update on the status of the FOIA request, having received no initial response or acknowledgment.

48. On June 5, 2020—almost one year after the FOIA request was submitted—the Air Force sent an email to counsel for WeCount! stating it "should have received an acknowledgment letter indicating case number 2019-04651-F was assigned to it." The Air Force did not attach any acknowledgment letter to the email. Without providing any timeframe, the Air Force stated it would respond to the FOIA request once its review process was complete.

49. On November 9, 2020, counsel for Plaintiff sent an email to the Air Force again seeking a response to the FOIA request. On November 13, 2020, the Air Force replied that it was coordinating its response with HHS and other agencies, and that Plaintiff should expect a response to its FOIA request within two weeks.

50. On December 3, 2020, counsel for Plaintiff, having not received a response in the above-stated timeframe, sent an email to the Air Force inquiring about the status of the FOIA request. On December 7, 2020, the Air Force replied that "[HHS] is currently processing [the] request." The Air Force did not indicate whether it was still in fact processing the FOIA request.

51. On December 7, 2020, counsel for Plaintiff sent an email to the Air Force seeking clarity on whether the Air Force was still processing the FOIA request and asked the Air Force representative to call her.

52. On December 9, 2020, counsel for Plaintiff sent an email to the Air Force requesting a date by which the FOIA request would be processed.

53. On December 10, 2020, the Air Force sent an email to counsel for Plaintiff stating the Air Force Civil Engineer Center does not maintain any records responsive to the FOIA request and suggested the request be referred to DHS.

54. That same day, counsel for Plaintiff sent an email to the Air Force directing it to the text of the FOIA request, which plainly sought records pertaining to the Air Force. Counsel for Plaintiff further advised the Air Force that per EPA, the Air Force specifically maintains the environmental records sought in the request.

55. On December 10, 2020, the Air Force responded via email that the "request was reviewed by the Secretary of the Air Force for Environment, Safety, and Infrastructure (SAF/IE) with no records being produced[,]" and that it can "check with the [Air Force] Reserves FOIA office to see if they have any responsive records."

56. On December 14, 2020, Air Force personnel at the Homestead Base sent an email to counsel for Plaintiff with an attached letter acknowledging receipt of the FOIA request under the same case tracking number: 2019-04651-F.

57. On December 15, 2020, the Air Force sent an email to counsel for Plaintiff with an attached letter requesting Plaintiff narrow the scope of the FOIA request by limiting it to a range of dates so that the Air Force can "handle [the] request as expediently as possible."

58. On January 19, 2021, the Air Force sent an email to counsel for Plaintiff that it should receive a response to the FOIA request in three to four weeks.

59. On January 22, 2021, the Air Force sent an email to counsel for Plaintiff with an attached letter advising that having not received a response to its request to narrow the FOIA request by date range, the Air Force "closed the request without further action"—citing no legal

authority to do so—and that if the records were still sought, a new FOIA request would have to be submitted, and a new case number would be assigned to it.

60. On January 22, 2021, counsel for Plaintiff sent an email to the Air Force narrowing the scope of the FOIA request by limiting and specifying date ranges for certain records sought. Counsel for Plaintiff also spoke via telephone with the FOIA representative at the Air Force, explaining that the Air Force cited no legal authority to support closing out the FOIA request, nor did it provide any notice or warning that it would do so if it did not hear back by a certain date regarding narrowing the scope of the request. Counsel for Plaintiff maintained that the FOIA request should continue to be processed under its original agency case number.

61. On February 19, 2021, counsel for Plaintiff sent an email to the Air Force requesting an update on the status of the FOIA request, again not conceding or agreeing to the Air Force's stated closing of the original FOIA request.

62. On February 23, 2021, the Air Force sent an email to counsel for Plaintiff, treating its January 22, 2021, email narrowing the scope of the FOIA request as a *new* FOIA request, assigning it a 2021 agency case number.

63. On February 25, 2021, counsel for Plaintiff sent an email to the Air Force reiterating that it was not conceding or agreeing to the close-out of the original FOIA request, since the Air Force did not provide notice in its December 15, 2020, letter that it would do so.

64. On February 25, 2021, the Air Force sent an email to counsel for Plaintiff reversing course and stating that it would continue to process the FOIA request under its original 2019 agency case number.

65. To date, Plaintiff has not received any further communications from the Air Force.

**Communications with DHS and ICE about the FOIA Request.**

66. WeCount!'s and then Plaintiff AFSC's communications, through counsel, with DHS and ICE are attached as composite Exhibit G and are summarized as follows:

67. On August 9, 2019, DHS sent two emails to counsel for WeCount! with attachments acknowledging receipt of the FOIA request, assigning it agency case number 2019-HQFO-01115 and referring the request to ICE to fulfill.

68. On September 10, 2019, counsel for WeCount! sent an email to ICE seeking an update on the status of the FOIA request.

69. On October 8, 2019, ICE sent an email to counsel for WeCount! acknowledging receipt of the FOIA request, assigning it agency case number 2020-ICFO-01444, and invoking a "10-day extension," pursuant to 5 U.S.C. § 552(a)(6)(B), of the 20-working day time limit to respond to the request, because the "request seeks numerous documents that will necessitate a thorough and wide-ranging search."

70. On June 3, 2020—several months later and well outside the 10-working day extension invoked—counsel for WeCount! sent an email to ICE regarding the status of the FOIA request, having yet to receive a determination and responsive records. ICE did not respond to the email.

71. On November 9, 2020, counsel for Plaintiff sent an email to ICE again requesting an update on the status of the FOIA request, attaching ICE's FOIA "Check Status" webpage, which, upon entering the assigned case number for the FOIA request, showed the agency should have provided a response by July 30, 2020.

72. On December 21, 2020, ICE sent an email to counsel for Plaintiff stating that the FOIA request was in a "queue" to be processed, without providing any timeframe.

73. On June 7, 2021, counsel for Plaintiff sent an email to DHS and ICE requesting a determination on the FOIA request to avoid the need for litigation.

74. On June 7, 2021, DHS sent an email to counsel for Plaintiff stating that its FOIA request to DHS had been closed after the agency sent a "Final Response" on August 9, 2019, when it referred the request to ICE.

75. On July 13, 2021, counsel for Plaintiff replied to DHS, advising it of case law and relevant Department of Justice guidelines stating that the original agency to receive a FOIA request remains obligated to ensure the request is fulfilled.

76. To date, Plaintiff has not received any further communications from DHS or ICE.

77. As of the date of this filing, over two years after the submission of the FOIA requests, the Air Force, DHS, and ICE have yet to make a determination on them and promptly provide responsive records. Court intervention is now therefore required to compel Defendant agencies' compliance with FOIA.

## CLAIMS FOR RELIEF

### Count I: Defendants Violated the Freedom of Information Act by Failing to Make Determinations on the FOIA Request.

78. Plaintiff re-alleges and incorporates the allegations of all preceding paragraphs of this Complaint as if fully set forth herein.

79. Defendants the Air Force, DHS, and ICE are required to conduct an adequate search for records that are responsive to Plaintiff's FOIA request. 5 U.S.C. § 552(a)(3)(C), (D). Defendants are then obligated to make a final determination within 20 working days of receipt of the FOIA request. *Id.* § 552(a)(6)(A)(i). *See also* 6 C.F.R. § 5.6(c).

80. Defendants are required to provide "estimated date[s] on which the agenc[ies] would complete action" on the request if the request will take longer than 10 days to process. *Id.* § 552(a)(7)(A), (B); *accord id.* § 552(a)(6)(B)(i).

81. Defendants could only extend the 20-working day deadline for unusual circumstances, as defined by statute, and only for a maximum of 10 working days. *Id.* § 552(a)(6)(B)(i), (iii).

82. Defendants' failure to comply with required timeframes and procedures and to make a determination on Plaintiff's FOIA request violates 5 U.S.C. § 552.

**Count II: Defendants Violated the Freedom of Information Act by Failing to Promptly Disclose Responsive Records**

83. Plaintiff re-alleges and incorporates the allegations of all preceding paragraphs of this Complaint as if fully set forth herein.

84. Defendants are obligated under FOIA to promptly produce the records responsive to Plaintiff's FOIA request or the reasonably segregable portion of the requested records not subject to a FOIA exemption. 5 U.S.C. § 552(a)(3)(A), (b).

85. Defendants have not provided Plaintiff with any documents responsive to the July 26, 2019, FOIA request.

86. Defendants have not claimed that any records in their possession are exempt from disclosure.

87. Defendants' failure to respond to Plaintiff's FOIA request and disclose all responsive records violates 5 U.S.C. § 552.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)  Declare that Defendants the Air Force, DHS, and ICE violated FOIA by failing to comply with required timeframes and procedures and to make determinations on Plaintiff's FOIA request;

(2)  Declare that Defendants the Air Force, DHS, and ICE violated FOIA by failing to promptly provide records responsive to Plaintiff's FOIA request;

(3)  Order Defendants to immediately conduct a full and adequate search for the requested records;

(4)  Order Defendants to immediately provide determinations on Plaintiff's FOIA request;

(5)  Order Defendants to immediately provide all responsive records or the reasonably segregable portions of lawfully exempt records, pursuant to FOIA, within ten days of this Court's order;

(6)  Enjoin Defendants from assessing fees or costs for the processing of Plaintiff's FOIA request;

(7)  Retain jurisdiction over this case to rule on any assertions by Defendants that any responsive records, in whole or in part, are exempt from disclosure;

(8)  Award Plaintiff its litigation costs and reasonable attorney's fees incurred in this action; and

(9)  Order any further relief that this Court deems just and proper.

Respectfully submitted this 19th day of October, 2021.

/s/ Dominique Burkhardt
Dominique Burkhardt
FL Bar No. 100309
(appearing under LCvR 83.2(c)(1))
Earthjustice
4500 Biscayne Blvd., Ste. 201
Miami, FL 33137
T: 305-440-5435
dburkhardt@earthjustice.org

*/s/* Sean Helle
DC Bar No. 490085
Earthjustice
1001 G St., Ste. 1000
Washington, DC 20001
T: 202-667-4500
shelle@earthjustice.org

*Counsel for Plaintiff American Friends Service Committee*